103 N.J. Super. 180 (1968)
246 A.2d 759
JAMES A. BELLO, PETITIONER-APPELLANT,
v.
COMMISSIONER OF THE DEPARTMENT OF LABOR AND INDUSTRY, TRUSTEE OF THE TWO PER CENT FUND, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Essex County Court  Law Division.
Decided October 1, 1968.
*181 Mr. Seymour Jacobs for petitioner-appellant (Messrs. Balk, Jacobs, Goldberger and Mandell, attorneys).
Mr. William J. Walsh for respondent-respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
SUGRUE, J.C.C.
This case involves a limited appeal from a decision of the Commissioner of Labor and Industry fixing the amount of petitioner's benefits under the Two Per Cent Fund (hereinafter referred to as Fund). N.J.S.A. 34:15-95.1.
In July 1959 petitioner filed a formal claim petition against his employer for workmen's compensation benefits, alleging that by reason of the contraction of an occupational disease and the development of systemic poisoning due to inhalation, absorption and ingestion of harmful dusts and gases, he had suffered injury to his neurological and respiratory systems. An answer was duly filed denying all the material allegations of the petition.
Thereafter, in October 1961, the parties reached a mutual agreement as to certain payments which were to be made to and on behalf of petitioner. Among other things, the agreement provided that the employer pay petitioner a sum equal to 25% partial permanent total, or 137-1/2 weeks at $35 per week, a total of $4,812.50. The stipulations and agreement *182 were approved by the judge of compensation and payment ordered.
Petitioner subsequently obtained a third-party recovery in the sum of $30,000.
In July 1965 the judge of compensation ordered that the Fund be made a party to petitioner's action. Petitioner made application in January 1966 for compensation benefits under the Fund. In April 1967 a hearing was held on the claim set forth in the original petition. The Commissioner of Labor and Industry was represented by counsel at the hearing.
The judge of compensation found that (1) petitioner while employed had developed toxic encephalopathy as a result of inhalation of harmful fumes and gases; (2) the permanent disability resulting from the occupational disease was 75% of permanent total; (3) prior to his employment petitioner suffered from and was disabled to the extent of 25% permanent total by reason of several noncompensable preexisting pathological conditions, among which were chronic bronchitis and cardiovascular disability, and (4) the preexisting noncompensable disability of 25% permanent total, in combination with petitioner's compensable occupational disease, resulted in petitioner being totally and permanently disabled.
In accordance with these findings petitioner was awarded $13,500 for the 75% disability resulting from the occupational disease (337-1/2 weeks at $40 per week). The employer was given a credit of $8,800 by reason of its right to reimbursement from the recovery in the third-party action. Credit was also given for $4,812.50 previously paid by the employer under the agreement and order of October 1961.
The judge of compensation further found that petitioner had established his eligibility for Fund benefits.
Thereafter, in November 1967, the Judge of Compensation submitted an advisory report to the Commissioner of Labor and Industry. In general, the report recommended that the Commissioner adopt the findings made in the workmen's *183 compensation case. In particular, however, the judge recommended that the Fund should be reimbursed out of petitioner's third-party recovery, the Fund being chargeable with a portion of petitioner's counsel fee and expenses incurred to obtain the third-party recovery.
The advisory report concluded with the suggestion that petitioner be allowed benefits from the Fund at the rate of $13.33 per week until the balance of his third-party benefits had terminated, payments thereafter to be at the full weekly rate of $40.
In reaching the conclusion that the Fund was entitled to reimbursement from the third-party recovery, the judge of compensation recognized that section 40 of the Workmen's Compensation Act does not contain any express language granting reimbursement rights to the Fund. He reasoned, however, that the rights of the Fund should be no less than those of employers or compensation insurance carriers. It was further suggested that if the Fund were denied reimbursement, petitioner would have obtained double compensation.
The findings and recommendations of the judge of compensation were adopted by the Commissioner in March 1968. Petitioner appeals from that part of the Commissioner's determination which held that the Fund was entitled to reimbursement from the third-party recovery.
The question of whether the Fund is entitled to credit from a third-party recovery presents a question heretofore unanswered in any reported decision in this State. The few conflicting decisions in other jurisdictions are of little aid to the court in construing the pertinent provision of our Workmen's Compensation Act.
The Missouri Supreme Court in Cole v. Morris, 409 S.W.2d 668 (1966), decided that Missouri's Second Injury Fund was entitled to be subrogated to the rights of the injured workman in a third-party action. In that case a worker sustained injuries arising out of his employment. The State Industrial Commission found that (1) the employee suffered *184 an injury to his back equal to 40% of total; (2) a preexisting disability accounted for 30% of total, and (3) the two injuries combined had resulted in permanent total disability. The employee settled his claim for compensation against his employer, leaving remaining the claim of 30% of total disability against the Second Injury Fund. While that claim was pending the employee settled his separate action against a third-party tortfeasor. Subsequently compensation was awarded from the Second Injury Fund. The Circuit Court sustained the award.
The State Treasurer, as custodian of the Second Injury Fund, then appealed, contending that the Fund was entitled to the right of subrogation in the recovery against the tortfeasor. The employee argued that the Fund was not so entitled because no statute gave it the right of subrogation. In granting the Subrogation Fund the Missouri Supreme Court expressly rejected the argument that such right must be found in the state statutes. Instead, the court found the elements of legal subrogation were present, and that to deny the Second Injury Fund subrogation would result in unjust enrichment of the employee, who would retain both compensation and damages.
The Minnesota Supreme Court in a case involving an analogous question denied a state fund the right to subrogation. In Orth v. Shiely Petter Crushed Stone Company, 253 Minn. 142, 91 N.W.2d 463 (1958), a worker sustained employment-related injuries. The employer and its insurer admitted liability and paid $10,000 compensation. The worker instituted a common law action against the negligent third party which was settled for the net sum of $20,000. The employer and insurer waived their subrogation rights to any part of the sum.
After the full $10,000 compensation had been paid, the worker filed a petition with the industrial commission requesting payment of an additional $5,000 from a special compensation fund. The commission denied compensation on the basis that the fund was to be credited with the payment *185 of $5,000 from the money in the hands of the employee from the third-party recovery.
On appeal it was argued that subrogation rights were fixed by statutory provisions and those provisions did not extend such rights to the custodian of the special compensation fund. The state treasurer, custodian of the fund, contended that although the subrogation provision of the compensation statute made no reference to the special fund, under common law principles of equity the fund could be subrogated in third-party negligence actions arising out of industrial accidents. The Minnesota Supreme Court held that since the legislature failed to provide for subrogation, the court was not authorized to construe the subrogation statute to make up for the omission.
In New York the problem is dealt with by express statutory language. The Workmen's Compensation Law, § 29 subdiv. 1, 4 (McKinney's Consol. Laws 1965, c. 67), provides that a carrier liable for the payment of compensation has a lien on the proceeds of a third-party recovery to the extent of compensation awarded, after the deduction of reasonable and necessary expenditures, including attorney's fees, incurred in effecting such recovery. Under the provisions of the Second Injury Law the carrier must pay the award in the first instance. Thereafter, however, the carrier is entitled to reimbursement for all compensation and medical benefits subsequent to those payable for the first 104 weeks of disability. Workmen's Compensation Law, § 15, subdiv. 8, par. (d) (McKinney's Consol. Laws 1965).
Thus, in New York, by reason of the fact that the statute makes the carrier liable in the first instance for the total award in second-injury cases, the Special Disability Fund receives the benefit of a net recovery in a third-party action when the recovery therein exceeds the compensation and medical expenses payable for the first 104 weeks of disability. Dougherty v. J.F. Quakenbush Waverly Stage Co., 10 A.D.2d, 125, 197 N.Y.S.2d 658 (Sup. Ct. 1960).
*186 Neither that part of our Workmen's Compensation Act relating to second-injury cases, N.J.S.A. 34:15-95, or the section relating to reimbursement and credit from third-party recoveries, N.J.S.A. 34:15-40, expressly give the Fund the right to reimbursement or credit out of the recovery in a third party action. After a review of both provisions the court concludes that the Fund is not entitled to credit from such a recovery.
The original Compensation Act, L. 1911, c. 95, contained no provision for subrogation or reimbursement to an employer or insurer for compensation paid out. Accordingly, the injured employee or his dependents could recover full compensation from the employer as well as from the wrongdoer. Newark Paving Co. v. Klotz, 85 N.J.L. 432 (Sup. Ct. 1914, affirmed, 86 N.J.L. 690 (E. & A. 1914). The 1913 Legislature evidently considered that such a situation called for legislation and passed L. 1913, c. 174. That law provided the employer with reimbursement rights; no relief was extended to an insurance company, either by way of subrogation or reimbursement. Thus, in Erie Railroad Co. v. Michelson, 111 N.J. Eq. 541 (E. & A. 1932), it was held that where the insurer had made payments directly to eligible dependents it was not entitled to reimbursement or subrogation from a third-party recovery. The court said:
"The statute in question extends no relief to the insurance company, either by way of subrogation or reimbursement. * * * [A]nd the fact that the employee's dependents accepted weekly payments direct from the insurance company raises no implied contract or agreement, either in law or in equity, that said dependent will reimburse the insurance company out of the judgment recovered against the Erie Railroad Company, [citing cases]" (at pp. 545-546)
In New York S. & W.R.R. Co. v. Huebschmann, 111 N.J. Eq. 547 (E. & A. 1932), an employer demanded reimbursement out of moneys paid into court by a third-party tortfeasor. The insurer had paid the workmen's compensation award. The court denied the employer reimbursement *187 because it had not paid the award. It was argued that the principle of common law subrogation applied. In refuting that argument the court stated:
"With respect to which it need only be said that (a) the right of the employer to reimbursement is purely statutory; (b) it was determined in the Michelson Case that the statute extended no relief to the insurance carrier either by way of subrogation or reimbursement. * * *." (at p. 550)
The Legislature apparently anticipated the problems which would arise under the 1913 act and the identical provisions of the Workmen's Compensation Law which followed, L. 1919, c. 93. In 1931 the law was amended to authorize the employer or his insurance company to proceed against a third-party after certain conditions were met; L. 1931, c. 279. The amendment of 1931 was subsequently construed to give an insurer reimbursement rights. Scheno Trucking Co. Inc. v. Bickford, 115 N.J. Eq. 380, 387 (Ch. 1934), affirmed 116 N.J. Eq. 586, 587 (E. & A. 1934). L. 1936, c. 162, p. 382 codified that interpretation.
Under the present statute, N.J.S.A. 34:15-40, the right to reimbursement from a third-party recovery is purely statutory and is derived from what is termed the employer's or insurance carrier's "statutory subrogation." United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157, 166 (1950). The statute must be strictly construed. Dugan Brothers of New Jersey v. Robinson, 139 N.J. Eq. 318, 320 (Ch. 1947); Standard Surety & Casualty Co. v. Murphy, 129 N.J. Eq. 284, 288 (E. & A. 1941).
This brief history of the relevant parts of N.J.S.A. 34:15-40 shows, at least where carriers are concerned, a judicial reluctance to expand the scope of the reimbursement right beyond the express statutory language. No reason has been suggested as to why similar restraint ought not to be applied where, absent express statutory authority, the Fund seeks credit from a third-party recovery.
*188 N.J.S.A. 34:15-40 sets up a comprehensive plan for regulating the rights and responsibilities of the several parties concerned in compensation payments where, in the course of his employment, injury or death comes to a workman as the result of the fault of a third party. That section, among other things, retains for the injured employee or his dependents the benefit of his common law action against the third party in which the common law rule for the assessment of damages is applicable. That rule holds the third party liable only for those damages which flow from the third party's act or omission, and recovery in such an action relates solely to the work-connected accident.
The award from the Fund, on the other hand, is made in permanent disability cases for that portion of the total disability which is wholly unrelated to employment. Belth v. Anthony Ferrante & Son, 47 N.J. 38, 48, 49 (1966). Thus, the award from the Fund and the recovery in the third-party action are for entirely different disabilities. In view of this fact and in accordance with past judicial reluctance to expand the reimbursement and credit provisions of section 40 of the Workmen's Compensation Act, this court holds that the Fund is not entitled to credit from a third-party recovery.
Inasmuch as the Fund is not entitled to reimbursement from the third-party judgment in favor of the employee, the employee's compensation from the Fund should have commenced at the expiration of the 75% partial permanent award in favor of him. That date was January 11, 1966. The fund is obligated to the employee for a lump sum payment at the rate of $40 per week from January 11, 1966 to the date of this opinion, less payments already made. From the date of this opinion the employee is entitled to weekly benefits at the rate of $40 per week, to continue in accordance with N.J.S.A. 34:15-95 and N.J.S.A. 34:15-12(b), subject to such periodic reconsideration and extension as the case may require and subject to other provisions of the Workmen's Compensation Act.
*189 Since counsel fees cannot be awarded on a finding against the Fund, N.J.S.A. 34:15-95, provision for counsel fees at the original hearing and on this appeal cannot be made.
The matter is remanded to the Commissioner of the Department of Labor and Industry for action not inconsistent with this opinion.