Ann B. CAMPION, Plaintiff,

v.

MONTGOMERY ELEVATOR COMPANY and Liberty Mutual
Insurance Company, Defendants-Appellants,†

OZAUKEE COUNTY, Defendant-Respondent.

Court of Appeals

*No. 92–0758. Submitted on briefs October 14, 1992.—Decided
November 18, 1992.*

(Also reported in 493 N.W.2d 244.)

† Petition to review denied.

On behalf of the defendants-appellants the cause was submitted on the briefs of *Jeffrey A. Schmeckpeper* and *Cecilia M. McCormack* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

On behalf of the defendant-respondent the cause was submitted on brief of *Dennis E. Kenealy*, Ozaukee County Corporation Counsel.

Before Brown, Anderson and Snyder, JJ.

ANDERSON, J. Montgomery Elevator Company and Liberty Mutual Insurance Company, its insurer (collectively referred to as Montgomery), appeal from the trial court's order finding that Ozaukee county (county) did not waive its rights of reimbursement from Montgomery for worker's compensation paid by the county and that the county did not violate its examination and maintenance agreement with Montgomery relative to the naming of Montgomery as an additional insured under the county's insurance policy. We conclude that the county's right under sec. 102.29(1), Stats., to be reimbursed for worker's compensation paid to Ann Campion as a result of injuries caused by Montgomery's negligence is not a right of subrogation waived by the parties. We also conclude that the contract between Montgomery and the county did not require the county to name Montgomery as an additional insured in a policy covering the negligence in these circumstances. Therefore, we affirm.

Montgomery was under contract with the county to inspect and maintain the county courthouse elevators. Campion, a county employee, was injured when an elevator bounced after reaching the floor where she was to leave the elevator. As a result of this injury, the county paid worker's compensation to Campion. Campion later commenced this suit against Montgomery alleging that Montgomery was negligent in its maintenance of the elevator. Because the county had paid worker's compensation to Campion, Campion named the county as a defendant pursuant to sec. 803.03, Stats., although in the complaint Campion expressed doubts that the county truly was a subrogated party and Campion made no claim for affirmative relief against the county.

The county filed a notice of appearance pursuant to secs. 102.29(1) and 803.03(2), Stats., with the intent to be reimbursed for the amounts it paid to Campion. Montgomery answered the complaint and cross-claimed against the county, alleging that the inspection and maintenance agreement had been violated by the county and that the county was contributorily negligent.

After a trial, the jury awarded Campion total damages of $1,000,315.30 against Montgomery and allocated the liability 70% to Montgomery and 30% to the county. With the approval of the county, Montgomery then settled with the plaintiff for total damages of $944,410.75, which included $108,463.75 owed to the county for the worker's compensation it paid to Campion.

The trial court then ruled on Montgomery's and the county's claims as presented in motions after verdict. These motions had been reserved for after the verdict because they were questions of law based on the interpretation of the inspection and maintenance agreement. The court granted the county's motion asking for reimbursement of the worker's compensation payments because the agreement waived subrogation rights only and the county's rights under sec. 102.29(1), Stats., were not subrogation rights. The court also denied Montgomery's motion to hold the county liable to Montgomery for not naming Montgomery as an additional insured pursuant to the terms of the service agreement. The court reasoned that because Montgomery's liability to Campion was based on negligence in the inspection and maintenance of the elevator and the agreement required the county to name Montgomery as an additional insured only for damages caused by the ownership, use or operation of the equipment, the agreement was not violated. Montgomery appeals both rulings. Based upon the parties' contractual obligations, the court also granted a

second motion by Montgomery for contribution or indemnification allowing Montgomery to recover from the county 30% of the amount paid to Campion in settlement; Montgomery does not appeal that ruling.

### WAIVER OF THE REIMBURSEMENT OF WORKER'S COMPENSATION PAYMENTS

On appeal, Montgomery argues that the county waived its right to be reimbursed for the worker's compensation payments made based on a provision in the inspection and maintenance agreement which reads:

> You hereby waive any and all rights of subrogation, arising as a matter of law or otherwise which you might hereafter have against Montgomery Elevator Company or its affiliates.

Central to Montgomery's argument is whether the county's right to reimbursement under sec. 102.29(1), Stats., is subrogation. The interpretation of a statute is a question of law on which we owe no deference to the trial court. *Central Nat'l Bank v. Dustin*, 107 Wis. 2d 614, 617, 321 N.W.2d 321, 322 (Ct. App. 1982).

Chapter 102, Stats., sets forth the rules and procedures regarding worker's compensation. Section 102.29(1), Stats., provides that the application for or receipt of worker's compensation by an employee does not affect the tort liability of third parties to the employee. It also provides that any employer or insurer who has paid the compensation has a direct cause of action against the third party. The section reads in part:

> The employer or compensation insurer who shall have paid or is obligated to pay a lawful claim under this chapter shall have the same right [as the

410

employee] to make claim or maintain an action in tort against any other party for such injury or death. . .. However, [the employer or compensation insurer, or the employee making a claim] shall give to the other reasonable notice and opportunity to join in the making of such claim or the instituting of an action and to be represented by counsel. . .. Each shall have an equal voice in the prosecution of said claim, and any disputes arising shall be passed upon by the court before whom the case is pending . . .. If notice is given as provided in this subsection, the liability of the tortfeasor shall be determined as to all parties having a right to make claim, and irrespective of whether or not all parties join in prosecuting such claim, the proceeds of such claim shall be divided as follows . . ..

Section 102.29(1).

Montgomery asserts that this court and our supreme court have "expressly recognized that the right to recover worker's compensation payments is a right which arises through subrogation." Montgomery states the rule too broadly—subrogation is only one of the ways employers can recover such payments. Of the three published cases which Montgomery cites in support of its assertion, *New Amsterdam Casualty Co. v. Acorn Products. Co.*, 42 Wis. 2d 127, 166 N.W.2d 198 (1969), *Kottka v. PPG Industries., Inc.*, 130 Wis. 2d 499, 388 N.W.2d 160 (1986), and *Berna-Mork v. Jones*, 165 Wis. 2d 661, 478 N.W.2d 301 (Ct. App. 1991), only *Kottka* involved an employer seeking reimbursement under sec. 102.29(1), Stats. The employer in *New Amsterdam* was seeking recovery under the theory of subrogation because the third party was not a tortfeasor, making sec. 102.29(1) inapplicable. *See New Amsterdam*, 42 Wis. 2d at 131 n.1, 166 N.W.2d at 200. In *Berna-Mork*, the employer was seeking recovery under a contract theory.

411

*Berna-Mork,* 165 Wis. 2d at 664, 478 N.W.2d at 303. *New Amsterdam* and *Berna-Mork* are not authorities for an interpretation of the type of right granted through sec. 102.29.

Even in *Kottka,* our supreme court never explicitly held that the right to recover against third parties under sec. 102.29(1), Stats., is a subrogation right. In reciting the undisputed underlying facts of the case, the court stated: "[Kottka's] employer and its worker's compensation insurers also joined as subrogated parties in [the third party] actions." *Kottka,* 130 Wis. 2d at 503, 388 N.W.2d at 162. We think that this shorthand referral to the employer as a "subrogated party", when the facts were not in dispute and when that fact was not a basis for the court's decision, is not sufficient to state a rule that rights under sec. 102.29(1) are subrogation rights. This statement was not an opinion of the court; it does not even rise to the level of dicta in an opinion, to which we also are not bound.[1]

A careful reading of sec. 102.29(1), Stats., reveals that the rights granted by the statute are distinct from subrogation. Section 102.29(1) provides for a direct cause of action by an employer against a third party. The employee is not a necessary party to the action, although

[1] *Kottka* also refers to an employer's "subrogation interest" in the proceeds of a third party settlement under a Minnesota worker's compensation statute and *Henning v. Wineman,* 306 N.W.2d 550 (Minn. 1981). *Kottka v. PPG Indus., Inc.,* 130 Wis. 2d 499, 505 n.1, 388 N.W.2d 160, 163 (1986). Although our supreme court suggests this statute has "facial similarity" to sec. 102.29, Stats., *Kottka,* 130 Wis. 2d at 505 n.1, 388 N.W.2d at 163, we note that the Minnesota statute explicitly indicates that the employer is subrogated to the employee's interest, *see* Minn. Stat. sec. 176.061(5)(a) (1992), and therefore Minnesota law is not controlling in our evaluation of the rights under sec. 102.29(1).

he or she must be given notice and the opportunity to join if he or she wishes. *Id.* The statute also provides that the employer and employee have equal voices in the prosecution of the claim, with the court passing upon any disputes between them. The statute then provides its own rules for the distribution of the recovery. *Id.* Since the employee might not be a party in the action, these rules ensure that all parties with an interest participate in the proceeds, according to the statutory formula.

Section 803.03(2), Stats., and the common law of subrogation provide a different procedure for subrogated parties to recover. First, subrogated parties must be joined by all parties asserting claims. *See* sec. 803.03(2)(a). Subrogated parties may bring their own actions against a third party without joining the injured party, *see, e.g., Blue Cross & Blue Shield United v. Fireman's Fund Insurance Co.,* 140 Wis. 2d 544, 547, 411 N.W.2d 133, 134 (1987): but in order to state a claim for subrogation the complaint must state that the injured party has settled with the third party, *see, e.g., id.,* has been made whole, *Rimes v. State Farm Mutual Automobile Insurance Co.,* 106 Wis. 2d 263, 272, 316 N.W.2d 348, 353 (1982), or state some other justification which would lead to an equitable result, *see Vogt v. Schroeder,* 129 Wis. 2d 3, 15, 383 N.W.2d 876, 881 (1986).

Second, if a subrogated party is joined in an action, it has three options: (1) participate in the action, (2) agree to have its interest represented by the party that caused the joinder, or (3) move for dismissal. *See* sec. 803.03(2)(b), Stats. These options are different than those provided by sec. 102.29(1), Stats., because that section does not provide that a party may agree to have its interest represented by the other. Under sec.

413

803.03(2)(b), only if the subrogated party chooses to participate does it have an equal voice with the other claimants, but the statute does not provide how disputes are to be resolved. *See id.* Finally, this court has held that the reimbursement rights of a subrogated party are distinct from the statutory formula given for reimbursement under sec. 102.29(1). *See Martinez v. Ashland Oil, Inc.,* 132 Wis. 2d 11, 14, 390 N.W.2d 72, 73 (Ct. App. 1986).

Another reason for our conclusion that the rights provided by sec. 102.29(1), Stats., are not subrogation rights is that the text of that statute nowhere mentions "subrogation." Many other statutes expressly afford parties rights of subrogation. *See, e.g.,* secs. 107.31(6) (the state is subrogated to the rights of a party suffering mining-related injuries); 128.18(2) (an assignee for the benefit of creditors or an appointed receiver for the debtor is subrogated to the rights of creditors of the estate); 440.92(8)(e) (the state is subrogated to the rights of a consumer who claims a loss from illegal conduct of a cemetery authority or salesperson); 619.14(7)(c) (the mandatory health insurance risk sharing board is subrogated to the rights of a person eligible to recover damages for illness or injury caused by the act of a third person), Stats. This absence, coupled with our supreme court's recognition that the Worker's Compensation Act is a wholly statutory, legislatively created *substitute* for the common law, *Larson v. DILHR,* 76 Wis. 2d 595, 622, 252 N.W.2d 33, 46 (1977), leads us to conclude that the legislature intended the rights under sec. 102.29(1) to be an independent cause of action, not a type of subrogation. Because we hold that the county is not exercising subrogation rights, any waiver of subrogation rights, even if effective, does not apply.

414

We next examine Montgomery's claim that the county was required to name Montgomery as an additional insured on a policy covering Montgomery's negligence, but that the county failed to do so. Montgomery alleges that because of this breach, the county is liable for damages in an amount equal to the benefits which would have been available if the policy had been obtained. Montgomery's claim is based on a clause in the inspection and maintenance agreement with the county which reads:

> You shall at all times and at your own cost, maintain comprehensive bodily injury and property damage insurance (naming Montgomery Elevator Company as an additional insured), including bodily injury and property damage caused by the ownership, use or operation of equipment described herein.

The interpretation of a contract is a question of law on which we owe no deference to the trial court. *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653, 656 (Ct. App. 1990).

Both parties argue that the language of the contract is clear and must be given its full effect, but each interprets the contract provision differently. Montgomery argues that the contract provision requires the county to obtain "comprehensive" insurance, which includes, but is broader than, coverage for damages caused by the ownership, operation or use of the equipment. Montgomery asserts that this comprehensive insurance should have covered its negligence in the service and maintenance of the elevator. The county argues that the contract must be strictly construed when a party seeks to be indemnified under its provisions for that party's own

negligence and that there must be an express provision covering negligence. Since there was no such provision, the county contends that it was not required to provide insurance covering Montgomery's negligence.

Where terms of a contract are plain and unambiguous, the court will interpret it as it stands, even though the parties may have interpreted it differently. *Hortman v. Otis Erecting Co.,* 108 Wis. 2d 456, 461, 322 N.W.2d 482, 484-85 (Ct. App. 1982). The contract is considered as a whole in order to give each of its provisions the meaning intended by the parties. *Pleasure Time, Inc. v. Kuss,* 78 Wis. 2d 373, 379, 254 N.W.2d 463, 467 (1977).

Here, the parties dispute whether the term "comprehensive" insurance would include coverage for Montgomery's negligence in the service and maintenance of the elevator. The parties cite no support for either interpretation other than the language of the insurance clause itself. However, our independent examination of the contract yields another clause providing that Montgomery assumed liability for damages due to its own negligence:

> Nothing in this Agreement shall be construed to mean that Montgomery Elevator Company, or its subsidiaries, officers, directors, agents or employees, (herein collectively referred to as "affiliates") assume any liability for damages or otherwise on account of accidents to persons or property (including but not limited to accidents arising or resulting from the overloading and/or misloading of any elevator or other device covered by this contract, beyond its rated capacity) *except those directly due to the negligence of Montgomery Elevator Company.* [Emphasis added.]

The paragraph goes on to provide an indemnification clause to specifically protect Montgomery from liabilities arising from the operation of the equipment:

> You shall at all times be solely liable for the operation of the equipment and you shall indemnify, protect and save harmless Montgomery Elevator Company and its affiliates from and against liabilities, losses and claims of any kind or nature imposed on, incurred by, or asserted against Montgomery Elevator Company or its affiliates arising out of the operation of the equipment.

Montgomery's specific acknowledgement of liability for its own negligence was not addressed in the insurance clause. The insurance clause is specific only to those liabilities for property damages and bodily injuries which the contract earlier stated were the responsibility of the county. Considering the contract as a whole, a reasonable interpretation of the clauses would be that the insurance was to cover those types of losses which were the responsibility of the county, such as liability for bodily injury and property damages due to ownership, use or operation of the elevator. This insurance would be an assurance to Montgomery that the county would have resources if required to pay Montgomery under the indemnification clause. The insurance would also provide resources to Montgomery for liabilities asserted against it if the injury or damage arose out of the operation of the equipment. If Montgomery had intended the insurance purchased by the county to also cover liabilities which Montgomery had specifically assumed, namely, its negligence in inspecting and maintaining the elevator, it should have stated so in the contract.

We hold that the county was not required to name Montgomery as an insured on a policy which would have

covered Montgomery's liability under the circumstances of this injury. Because Montgomery would not have been protected if named on an insurance policy it required by the contract, Montgomery suffered no damages due to the breach and therefore cannot recover from the county. *See Bentley v. Fayas,* 260 Wis. 177, 184-85, 50 N.W.2d 404, 408-09 (1951).

*By the Court.*—Order affirmed.